**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-23595-BLOOM/Elfenbein

**RPS PANAMA HOTEL, INC.**,

Petitioner,

v.

**ANCON HOTELS, S.A.**, *et al.*,

Respondents.
_______________________________/

**ORDER**

**THIS CAUSE** is before the Court on Petitioner RPS Panama Hotel, Inc.'s ("RPS") Petition in the Form of a Motion to Confirm Arbitration Award and for Entry of Final Judgment Confirming Arbitration Award (the "Petition"), ECF No. [1]; and Respondents Eurostars Hotel Company, S.L. ("Eurostars") and Keytel, S.A.'s ("Keytel" and collectively "Respondents") Motion to Dismiss the Petition as Against Them and Incorporated Memorandum of Law (the "Motion to Dismiss"), ECF No. [15]. In Response, RPS filed a Response to Respondents' Motion to Dismiss the Petition as Against Them and Incorporated Memorandum of Law (the "Response"), ECF No. [19], and Respondents subsequently filed their Reply Memorandum of Law in Further Support of their Motion to Dismiss the Petition as Against Them (the "Reply"), ECF No. [20]. Following the Parties' consent to Magistrate Judge jurisdiction, the Honorable Beth Bloom transferred the case to the undersigned for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* ECF No. [24]. For the reasons explained below, the Petition, **ECF No. [1]**, is **GRANTED,** and the Motion to Dismiss, **ECF No. [15],** is **DENIED**.

## I. INTRODUCTION

### a. Factual Background

This case arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("the New York Convention"), 9 U.S.C. § 202; the Inter-American Convention on International Commercial Arbitration (opened for signature Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245) (the "Panama Convention" or the "Inter-American Convention"), 9 U.S.C. § 302; and the Federal Arbitration Act (the "FAA"), 9 U.SC. § 9. *See* ECF No. [1] at ¶¶1, 8. RPS is a Panamanian company incorporated in Panama. *See* ECF No. [1] at ¶2. ANCON[1] Hotels, S.A. ("ANCON"), is also a Panamanian company incorporated in Panama. *See id*. at ¶3. Eurostars and Keytel are both Spanish corporations incorporated in Spain. *See id*. at ¶¶4-5. RPS and ANCON entered into a lease agreement on July 28, 2016, whereby ANCON leased a hotel from RPS in Panama City, Panama. *See id*. at ¶7. The Lease Agreement contained an arbitration clause that required "[a]ny difference or controversy arising out of the interpretation or application of this Agreement that cannot be settled amicably between the parties within thirty (30) days shall be submitted to Arbitration of law, in accordance with the rules of the [International Chamber of Commerce ("ICC")] in the Spanish language, in the city of Miami, Florida, United States of America." *See id*.

Pursuant to the arbitration clause, RPS filed a Request for Arbitration and Arbitration Demand on February 9, 2022, claiming breach of the Lease Agreement against ANCON, Eurostars and Keytel. *See id*. at ¶9; *see also* ECF No. [1-2] at ¶¶ 12-21, 70-75, 78-80. The arbitration hearing

[1]RPS issued a Summons to ANCON on October 10, 2025, *see* ECF No. [9], and was required to complete service on ANCON by May 31, 2026. The undersigned thereafter entered an Order to Show Cause, requiring that, no later than July 10, 2026, RPS file proof of service on ANCON or show good cause for the failure to serve it. *See* ECF No. [23]. RPS, however, failed to do either, so Judge Bloom dismissed ANCON without prejudice and thereafter transferred the case to the undersigned based on the consent of all Parties to the action. *See* ECF No. [24].

before the Arbitration Tribunal (the "Tribunal") took place in Miami from June 4, 2024 to June 6, 2024; was conducted in Spanish; applied substantive Panamanian law; was governed by the 2021 ICC Rules; and applied the "Rules of the International Bar Association on the Taking of Evidence in International Arbitration adopted on 17 December 2020 by Resolution of the Council of the International Bar Association." *See* ECF No. [1-2] at ¶¶11, 62 (emphasis omitted). While Eurostars and Keytel were non-signatories to the Lease Agreement, the Tribunal ultimately found them subject to the arbitration clause because of their conduct "in connection with the execution, execution, and attempts to renegotiate the Contract – which include having paid the rental fee agreed to by ANCON under the Contract during the first 6, 12 or 18 months– sufficiently satisfy the requirements established in Panamanian law to extend the arbitration clause to non-signatory parties that they have participated 'actively in the conclusion and execution of the contract containing the arbitration agreement.'" *See* ECF No. [1-2] at ¶85 (footnote and citation omitted). Ultimately, the Tribunal issued the Final Report (the "Final Arbitration Award") on January 8, 2025; found that RPS's claims against Eurostars and Keytel should be dismissed except with respect to the costs of the arbitration; and ordered Eurostars, Keytel, and ANCON to pay RPS $100,500 in arbitration costs. *See id.* at ¶¶ 89, 119, 123-24, 125(e); *see also* ECF No. [1] at ¶13. Eurostars, Keytel, and ANCON requested an additional award on February 5, 2025, and the Tribunal rendered its decision on March 20, 2025, including it as an addendum to the Final Award, which did not alter its requirements. *See* ECF No. [1-4] at ¶13.

Against this factual backdrop, RPS filed the Petition, ECF No. [1], on August 11, 2025, seeking to confirm the Final Arbitration Award because at the time, ANCON, Eurostars, and Keytel had yet to pay the award entered against them. *See* ECF No. [1] at ¶14. RPS asked the Court to confirm the Final Arbitration Award and enter a Final Judgment in RPS's favor, including post-

award prejudgment interest, reasonable attorney's fees and costs under Florida law, and "such other and further relief as the Court deems just and proper." *See id*. at ¶20. Approximately seven months later, Eurostars and Keytel paid RPS $100,500 pursuant to the Final Arbitration Award and filed the Motion.

**b. Procedural History**

In the Motion, Eurostars and Keytel first contend that the Petition is moot because they satisfied their obligation under the Final Arbitration Award when they wired the $100,500 owed to RPS. *See* ECF No. [15] at 4. They argue that because of this, there is no live controversy for the Court to decide. *See id*. at 5. Further, Eurostars and Keytel maintain that arbitration confirmation serves as a mechanism to enforce arbitration awards where the winning party is concerned that the loser will not pay. *See id*. at 6. This, Eurostars and Keytel contend, is not an issue here because they have fulfilled their obligation under the Final Arbitration Award and RPS now has no remaining controversy with them. *See id*. at 4-6. Second, Respondents contend that RPS is not entitled to prejudgment interest or attorney's fees because the Final Arbitration Award did not require such payment, there is no basis for the Court to expand its scope, and Eurostars and Keytel have willingly complied. *See id*. at 7. Finally, Eurostars and Keytel argue that attorney's fees are not recoverable in confirmation proceedings under the New York Convention where there is no independent legal basis for relief, and they did not act in bad faith, nor did RPS allege as much. *See id*. at 8.

In the Response, RPS denies that the Petition with respect to Eurostars and Keytel is moot because, although Respondents have paid the principal amount owed under the Final Arbitration Award, they have yet to pay post-award prejudgment interest, which starts accruing on the date of the award, not the date of the judgment confirming it. *See* ECF No. [19] at ¶22. RPS argues that

since the Court can still award post-award prejudgment interest, the controversy remains live. *See id*. at ¶¶23-24, 32. Further, RPS argues that it seeks taxable costs under Federal Rule of Civil Procedure 54(d)(1) in connection with the current proceeding for filing costs and service fees, which Eurostars and Keytel have not yet paid. *See id*. at ¶¶25-26. RPS maintains that this provides an independent basis for denying the Motion on grounds of mootness. *See id*. at ¶27. Finally, RPS argues that the Court must confirm the arbitration award under the FAA because (1) the FAA presumes the award will be confirmed; (2) none of the statutory defenses precluding relief are present here; and (3) the New York Convention also provides that the Court shall confirm the award, unless a defense applies under 9 U.SC. § 207. *See id*. at ¶¶ 29-31. Absent from RPS's Response is any rebuttal to Respondents' argument that RPS is not entitled to attorney's fees in this action.

In the Reply, Respondents reiterate that the Final Arbitration award does not grant post-award interest and contend that the cases RPS relies on for support are factually distinct from the instant matter. *See* ECF No. [20] at 2-3. Moreover, they maintain that RPS is unable to distinguish the cases on which they rely to support mootness because there is no dispute that Eurostars and Keytel satisfied their entire obligation under the Final Arbitration Award and RPS fails to indicate exactly which portion of the Final Arbitration Award remains unpaid. *See id*. at 3-4. Next, Respondents contend that taxable costs under Rule 54(d)(1) are collateral matters and do not, on their own, sustain Article III jurisdiction. *See id*. at 4. They argue that the Court must first issue a judgment before RPS can request taxable costs under Rule 54(d). *See* ECF No. [20] at 5. Because Eurostars and Keytel have already paid their full obligation under the Final Arbitration Award, they argue that there is nothing left for the Court to adjudicate regarding them. *See* ECF No. [20] at 5.

## II. LEGAL STANDARDS

### A. Article III Standing – Mootness

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." *Chafin v. Chafin*, 568 U.S. 165, 171-72 (2013). To be able to "'invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Id*. at 2 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). The case or controversy requirement must exist throughout all stages of federal proceedings. *See id*. (quotations and citations omitted). "Plainly, if a suit is moot, it cannot present an Article III case or controversy, and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004) (citing *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir.2001)). A case can become moot because of change in circumstances or law. *See id*. And "[i]f a lawsuit is mooted by subsequent developments, any decision a federal court might render on the merits of a case would constitute an advisory opinion." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) (citations omitted). "Under settled law, [a court] may dismiss the case for [mootness] only 'if it is impossible for a court to grant any effectual relief whatever' to [a party] assuming it prevails." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 376–77 (2019) (citations omitted, cleaned up).

### B. The Federal Arbitration Act

The New York Convention, codified in Chapter 2 of the FAA, governs international arbitration agreements. *See* 9 U.S.C. §§ 201-02. It provides that "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other

party to the arbitration" and that "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

The prerequisites to obtaining enforcement and recognition of an arbitration award under the New York Convention are that the party applying for recognition and enforcement of an arbitral award shall submit the (1) "duly authenticated original award or a duly certified copy thereof" and (2) the original arbitration agreement or a duly certified copy. *See* New York Convention, at Art. IV, 1. These requirements must be satisfied for a court to have subject-matter jurisdiction over a request to confirm an arbitration award, and satisfaction establishes a *prima facie* case for award confirmation. *See Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292, n. 3 (11th Cir. 2004) (quotations and citations omitted). "Confirmation under the FAA is essentially the same as recognition and enforcement under the New York Convention. Indeed, § 207 of the FAA uses confirmation interchangeably with recognition and enforcement[.]" *See Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876, 882 (11th Cir. 2023). Once a *prima facie* case for confirmation is established, the arbitration award is presumed confirmable, and an opposing party may only overcome this presumption by meeting one of the five grounds enumerated in Article V of the New York Convention. *See id.* at 1292, n. 3; *see also* New York Convention, at Art. V; 9 U.S.C. § 207. The Supreme Court has instructed that the FAA "unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008). Similarly, the New York Convention "compels" courts having jurisdiction to confirm arbitration awards. *See Commodities & Mins. Enter., Ltd. v. CVG Ferrominera Orinoco C.A.*, 111 F.4th 1294, 1298 (11th Cir. 2024). The Panama Convention's

"enforcement and recognition provisions are 'substantively identical' to those in the New York Convention." *See Corporacion AIC, SA*, 66 F.4th at 889 (11th Cir. 2023).

Article V of the New York Convention provides that "recognition and enforcement" of an arbitration award "may be refused" at the opposing party's request "only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:" (1) the parties to the agreement under Article II of the New York Convention were "under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made;" (2) the party against whom the award is entered "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;" (3) the award "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced;" (4) the "composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;" or (5) the award "has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." New York Convention, Art. V.1 The New York Convention provides two additional grounds for refusing to recognize and enforce an arbitration award when: (1) the subject matter of the dispute "is not capable of settlement by arbitration under the law of that country" or (2) the "recognition or enforcement of the award would be contrary to

the public policy of that country" *See* New York Convention, Art. V.2(a). The burden is on the opposing party to establish that one of these seven defenses applies. *Czarina, L.L.C.* 358 F.3d at 1292, n. 3 (11th Cir. 2004) (quotations and citations omitted).

It is "well settled that judicial review of an arbitration award is narrowly limited" and indeed it is "among the narrowest known to the law." *See Commodities & Mins. Enter., Ltd.*, 111 F.4th at 1299 (quoting, respectively, *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1190 (11th Cir. 1995); *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007)). Thus, it is "no surprise . . . that although the losing parties to international arbitrations often raise defenses to award enforcement . . . [under the Convention], those efforts rarely succeed." *See id*.

## III. DISCUSSION

The main issue here is whether the Petition as it applies to Eurostars and Keytel has been rendered moot upon payment of their financial obligation under the Final Arbitration Award, such that the Court need not confirm the Final Arbitration Award as to them. To recap, Eurostars and Keytel argue that their payment of $100,500 satisfies their obligation under the Final Arbitration Award; RPS is not entitled to post-award prejudgment interest under the Final Arbitration Award; and taxable costs by themselves are a collateral matter insufficient to confer Article III standing. *See* ECF No. [15] at 2, 5-8; ECF No. [20] at 4-6. RPS disputes this and asserts that the Final Arbitration Award bears interest from the time it was awarded and not from the date of judgment, so RPS has not yet been made whole and a live controversy exists on which the Court can grant relief. *See* ECF No. [19] at 2-5. RPS also argues that it is entitled to taxable costs as the prevailing party, which means that a controversy remains on this issue as well. *See id*. at 5-6.

The Court begins its analysis by determining whether confirming the Petition is appropriate under the relevant FAA provisions, which necessarily involves discussion of jurisdiction. It next determines whether RPS is entitled to post-award prejudgment interest on the Final Arbitration Award. Finally, the Court will address the arguments regarding taxable costs.[2]

**a. The Petition Presents a Live Claim or Controversy**

As explained above, this case arises under the New York Convention, which mandates enforcement of a final arbitration award if RPS makes a *prima facie* case for award confirmation, unless one of the seven enumerated defenses in Article V applies. *See Czarina, L.L.C.*, 358 F.3d at 1292, n. 3 (11th Cir. 2004) (quotations and citations omitted); *see also* New York Convention, Art. V; 9 U.S.C. § 207. First, the Court finds that RPS has satisfied the requirements of 9 U.S.C. § 207 and Article VI of the New York Convention. The Tribunal awarded the Final Arbitration Award on January 8, 2025, and RPS filed the Petition on August 11, 2025, well within the three-year period prescribed by the statute. *See* ECF No. [1] at 5; ECF No. [1-2] at 47. Next, RPS attached to the Petition (1) a copy of the request for arbitration, ECF No. [1-1], and (2) the Final Arbitration Award, ECF No. [1-2]. The Parties do not address, and therefore do not dispute, that certified copies of the request for arbitration and Final Arbitration Award have been attached, though the cover page of the Final Arbitration Award indicates that it is an "original of the decision rendered pursuant to the Arbitration Rules of the International Chamber of Commerce." *See* ECF No. [1-2]. Accordingly, RPS has made a *prima facie* case for award confirmation. *See Pott v. World Cap. Props. Ltd.*, No. 21-CV-23942-JAL, 2024 WL 2874858, *4 (S.D. Fla. Mar. 19, 2024), *report and recommendation adopted*, No. 21-CV-23942, 2024 WL 3912299 (S.D. Fla. Aug. 23, 2024), *aff'd*, No. 24-13071, 2025 WL 2719789 (11th Cir. Sept. 24, 2025).

[2] The Court does not address Respondents' argument about attorney's fees because RPS failed to respond to the argument and therefore conceded that it is unable to recover attorney's fees here.

Next, the Court assesses whether any of the seven jurisdiction-defeating defenses in Article V of the New York Convention apply in this case. The burden is on the opposing party to establish that one of these seven defenses applies. *See Czarina, L.L.C.*, 358 F.3d at 1292, n. 3 (quotations and citations omitted). At the "arbitration-award-enforcement stage, a district court must confirm the arbitral award unless a party successfully assert[s] one of the seven defenses against enforcement of the award enumerated in Article V of the New York Convention." *See Cvoro v. Carnival Corp.*, 941 F.3d 487, 495 (11th Cir. 2019) (quotations and citations omitted). Here, Eurostars and Keytel fail to raise any of the seven defenses.

The only defense Respondents raise is that the Petition is moot as applied to them because they paid the $100,500 required by the Final Arbitration Award. Contrary to this argument, however, the Eleventh Circuit has held that, in cases where the district court has federal question jurisdiction pursuant to 9 U.S.C. §§ 2, *et seq*., federal law applies and allows for post-award prejudgment interest on an arbitration award under the Court's discretion. *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447-48 (11th Cir. 1998), *overruled-in part on other grounds by Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876 (11th Cir. 2023). And under Eleventh Circuit law, prejudgment interest "is not a penalty, but compensation to the plaintiff for the use of funds that were rightfully his." *See id*. at 1446–47 (quoting *Ins. Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934, 942 (11th Cir.1990)). Prejudgment interest should, "absent any reason to the contrary, . . . normally be awarded when damages have been liquidated by an international arbitral award." *See id*. (quoting *Waterside Ocean Nav. Co. v. Int'l Nav. Ltd.*, 737 F.2d 150, 153-54 (2d Cir. 1984)); *see also Shanghai Liyu Optoelectronics Co. v. Brite Lite Tribe, LLC*, No. 24-CV-80690-RLR, 2025 WL 2105776, at *3 (S.D. Fla. July 25, 2025); *Magual v. Dager*, No. 1:23-CV-23491-RAR, 2025 WL 3905131, at *6 (S.D. Fla. Nov. 10,

2025). Because there is no controlling statute on the matter of interest rates, "federal courts' choice of a rate at which to determine the amount of prejudgment interest to be awarded is also a matter for their discretion" and such a "choice is usually guided by principles of reasonableness and fairness, by relevant state law, and by the relevant fifty-two week United States Treasury bond rate, which is the rate that federal courts must use in awarding *post*-judgment interest." *Indus. Risk Insurers*, 141 F.3d at 1447 (11th Cir. 1998) (citations omitted, emphasis in original).

Here, damages became liquidated upon the issuance of the Final Arbitration Award. Accordingly, the Court has the authority to, and presumptively should, award RPS interest on that amount between the time the Tribunal entered the Final Arbitration Award on January 8, 2025, and when Eurostars and Keytel satisfied their obligation under it. *See Lewis v. Haskell Co.*, 304 F. Supp. 2d 1347, 1350-51 (M.D. Ala. 2004) (explaining that, under Eleventh Circuit precedent, the court had the authority to award post-award prejudgment interest between the time a final arbitration award was entered and the date of payment of the award, upon confirming the arbitration award). Moreover, granting post-award prejudgment interest in the instant matter is equitable because "[Eurostars and Keytel] had the use of the award money for the time between the arbitration panel's award and the time [they] paid [RPS]," and because "[Eurostars and Keytel] did not contest the arbitration panel's award, but rather waited until [RPS ] brought an application for judgment confirming the award before paying it." *See id*. at 1352 (citing *Indus. Risk Insurers*, 141 F. 3d at 1446-47). Indeed, Eurostars and Keytel waited more than one year from the date the Final Arbitration Award issued to pay RPS. *See* ECF Nos. [15-1], [15-2], [15-3] at 2-3. Because the Court can still grant post-award prejudgment interest on the Final Arbitration Award, this controversy is very much alive.

While Eurostars and Keytel assert that the arbitral tribunal declined to award interest in this case, that is true with respect to interest for the sum claimed in the award itself. *See* ECF No. [1-3] at ¶117-18. The Final Arbitration Award is silent as to post-award prejudgment interest. Contrary to Respondents' interpretation, the Court in *Oriental Republic of Uruguay v. Italba Corp.*, 606 F. Supp. 3d 1250 (S.D. Fla. 2022), acknowledged that it had the discretion to award post-award prejudgment interest and normally should do so under Eleventh Circuit precedent, but it ultimately did not because the arbitral tribunal decided that specific issue, so the district court could not revisit matters already decided. *See id*. at 1261. That is simply not the case here.

Further, and ironically, Eurostars and Keytel assert that RPS is not entitled to prejudgment interest here because they have complied willingly with the Final Arbitration Award from the time the award issued to when it was confirmed, unlike the respondents in *Magual v. Danger*. *See* ECF No. [15] at 7 (citing *Magual*, at 2025 WL 3905131 at *7) (finding that post-award prejudgment interest was appropriate where respondents failed to comply with the arbitration award between the time it was rendered until it was confirmed). Contrary to their argument, Eurostars and Keytel knew about their obligations under the Final Arbitration Award from the moment it issued and still waited more than one year to pay. *See* ECF Nos. [15-1], [15-2], [15-3] at 2-3. Here, the Court, in its discretion, awards RPS post-award prejudgment interest, and doing so does not disturb the arbitrator's findings or expand the scope of the Final Arbitration Award. And because the payment of post-award prejudgment interest is still at issue, a case or controversy still exists under Article III, so the Petition is not moot.

In the Motion and Reply, Eurostars and Keytel cite to several cases to support their mootness position, but the Court finds these cases to be distinguishable. Turning first to *Drs. Ellis, Rojas, Ross & Debs, Inc. v. UMR, Inc.* No. 24-CV-20428, 2025 WL 742761 (S.D. Fla. Mar. 9,

2025), the petitioner there sought to confirm an already fully satisfied arbitration award. *See* 2025 WL 742761 at *1-2. The petitioner's main contention regarding confirmation of the arbitration award was that the arbitration process is not complete until a district court confirms the award. *See id*. at *3. Contrastingly, RPS disputes that Eurostars and Keytel's obligations under the Final Arbitration Award are satisfied, an argument nowhere to be found in *Drs. Ellis, Rojas, Ross & Debs, Inc.*[3]

Respondents also discuss at length *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 68 (2d Cir. 2023), where the Second Circuit declined to confirm an arbitration award after finding it moot. *See* ECF No. [15] at 3-5; *see also* ECF No. [20] at 4-5. But in *Stafford*, it was "undisputed that [the respondent] satisfied the award in full" so the petitioner was not entitled to any other relief. *Stafford*, 78 F.4th at 68. That is not the case here where RPS seeks other relief in the form of post-award prejudgment interest. Further, while it is true that the *Stafford* court held that the "FAA's process for confirming an arbitration award still requires Article III injury, and § 9 of the FAA does not itself confer standing," *see id*. at 69, RPS maintains Article III standing here because it disputes that the entire financial obligation to it, including post-award prejudgment interest, has been satisfied. Moreover, *Stafford* does not address the issue of post-award prejudgment interest, which is the critical issue here. Indeed "[i]f there is any chance of money changing hands, [RPS's] suit remains live." *Mission Prod. Holdings*, 587 U.S. at 377 ("For better or worse, nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents.") (citation omitted). Because RPS seeks to recover the unpaid interest in the Petition, the Petition presents a live case or controversy, requiring that the Motion to Dismiss, ECF No. [15], be denied.

---

[3] Moreover, in that decision, the district court was not required to confirm the arbitration award because the parties did not have an arbitration agreement, making § 9 of the FAA inapplicable. *Drs. Ellis, Rojas, Ross & Debs, Inc.*, 2025 WL 742761 at n. 1. This is not the case here, where the arbitration agreement and subsequently the Final Arbitration Award, are subject to § 207 of the FAA. *See id*. at *3.

Further, for the reasons explained above, the Court finds that RPS is entitled to recover post-award prejudgment interest from Respondents on the $100,500 awarded in favor of RPS, which shall accrue from the date the Final Arbitration Award was entered (January 8, 2025) through the date the principal was paid (March 6, 2026). The Parties, however, did not address the rate at which interest shall accrue, so the Court will allow limited supplemental briefing on that issue along with a proposed calculation.

**b. Petitioner's Request for Taxable Costs is Premature**

In its Response, RPS argues that it is entitled to taxable costs under Rule 54(d)(1), so its entitlement to a costs award also presents a live case or controversy under Article III. *See* ECF No. [19] at 25-28. The Court, however, has not yet entered a final judgment in this case, so RPS's request for taxable costs is premature. "Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d)." *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995) (citation omitted). RPS may raise the issue upon entry of a final judgment.

## IV. CONCLUSION

For the reasons explained above, it is **ORDERED and ADJUDGED** that:

1. The Petition in the Form of a Motion to Confirm Arbitration Award and for Entry of Final Judgment Confirming Arbitration Award, **ECF No. [1]**, is **GRANTED**;
2. Respondents' Motion to Dismiss, **ECF No. [15]**, is **DENIED**;
3. **No later than September 7, 2026**, RPS **SHALL** file supplemental briefing limited to three pages containing its computation of post-award pre-judgment interest that accumulated from the date of the Final Arbitration Award through the date Respondents tendered payment in the amount of $100,500;

4. **No later than September 14, 2026,** Respondents **SHALL** file supplemental briefing limited to three pages advising the Court whether they agree with RPS's computation or, if they disagree, providing their own computation of post-award prejudgment interest;
5. The Clerk is directed to **CLOSE** this case;
6. Final Judgment shall issue by separate Order following the Parties' supplemental briefing.

**DONE and ORDERED** in chambers in Miami, Florida on August 31, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

Cc: All Counsel of Record